UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**LLOYD ELTON BODDIE, JR.,**

                              **Plaintiff,**

     vs.                                                      9:99-CV-1016

**J. BRADLEY, Correctional Officer;**
**D. BARBER, Correctional Officer;**
**M. LAMAR, Correctional Officer;**
**MR. HARVEY, Hearing Officer;**
**M. SCHAAP, Correctional Officer;**
**P. CALLANAN, Correctional Counselor;**
**W. NAYLOR, Correctional Officer; and**
**G. SCRCKI, Lieutenant,**

                              **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

**DECISION & ORDER**

**I. Introduction**

      Plaintiff Lloyd Elton Boddie ("Boddie"), proceeding *pro se*, filed a complaint on June 28, 1999, pursuant to 42 U.S.C. §§ 1983 and 1985 alleging that Defendants, eight New York State Department of Correctional Services ("DOCS") employees, violated his constitutional rights. Specifically, Plaintiff alleges that Defendants filed false misbehavior reports, delayed access to legal mail, provided unsanitary food and living conditions, caused loss of his personal property, assaulted him, and failed to provide timely disciplinary hearings all in violation of the First, Eighth and Fourteenth Amendments. The complaint sought compensatory and punitive damages.

1

Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). On March 25, 2002, this Court adopted the Report-Recommendation and Order dated March 8, 2001 by Magistrate Judge Homer and granted Defendants' motion to dismiss the action on the ground that Plaintiff failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff appealed.

On appeal, the Second Circuit vacated the judgment and remanded the case for further proceedings in light of the Second Circuit's decisions in Giano v. Goord, 380 F.3d 670 (2d Cir. 2004), Hemphill v. State of New York, 380 F.3d 680 (2d Cir. 2004), and Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004). Specifically, the Second Circuit directed this Court to determine (1) whether Boddie's letters of complaint sufficed to put the defendants on notice and give them an opportunity to address the complaints internally in light of Johnson decision, 380 F.3d at 697; (2) whether Boddie's appeals of the misbehavior reports filed against him were "enough to 'alert [] the prison to the nature of the wrong for which redress is sought,'" id.; and (3) whether "special circumstances" exist to excuse Boddie's failure to exhaust the administrative remedies in light of the Giano, 380 F.3d at 675-76, and Hemphill, 380 F.3d at 689, decisions. The Second Circuit directed this Court's attention to Boddie's claims that he had filed letter complaints about various incidents alleged in his Complaint.

**II. Background**

Boddie stated on the Inmate Civil Rights Complaint Form that he had not filed any grievances. Based on this admission, both the Magistrate Judge and this Court concluded that Plaintiff did not exhaust the available administrative remedies and dismissed the case. However, in

2

the body of his Complaint, Boddie claims that he filed letter complaints about various incidents. In addition, Boddie now claims that he appealed the misbehavior reports filed against him and that these appeals should be sufficient to exhaust his claims based on those misbehavior reports.

### III. Facts

On April 14, 1997, Plaintiff complained to Deputy Superintendent of Security William Connolly about Officer Bradley's misconduct of serving inmates their meals on the floor. William Connolly stated this conduct would not be repeated. Compl. 4C.[1]

On August 29, 1997, Plaintiff filed a formal grievance against Officer Barber for the allegedly "false" misbehavior report filed by Barber. Id. at 4D. Plaintiff stated in his grievance that any future threats, reprisals or harassment would be in retaliation for filing this grievance. Id. Plaintiff did not specify to whom he filed this formal grievance, but he stated that he did not receive any response from state officials in the "Central Office." Id.

Additionally, in his Memorandum of Law, Plaintiff alleges that he wrote letters to various Superintendents for missing personal property on March 29, 1998; for the missing window in his cell on April 3, April 12 and May 3, 1998; and finally he wrote a complaint letter to Maggie Lizenberger, L.S. in Central Office about Officer Davis' holding up law material from Plaintiff.

### IV. Discussion

---

[1] In his Memorandum of law, Plaintiff additionally stated that, on April 16, 1997, he wrote a formal complaint against Bradley's misconduct to Deputy Superintendent of Security William Connolly, but it has never been fully investigated and nobody responded to him. Memorandum of Law at pp. 3-4.

3

For purposes of this decision on Defendants' motion to dismiss, the facts as alleged by Plaintiff in his Complaint are accepted as true. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) ("a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant.").

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The regular DOCS grievance procedure consists of three tiers. Hemphill 380 F.3d at 682. The first step for the inmate is to file a level 1 grievance (either on an Inmate Grievance Complaint Form, or on plain paper if the form is not readily available) with the Inmate Grievance Resolution Committee ("IGRC").[2] The IGRC, which is composed of fellow inmates and prison officials, must convene a hearing within seven working days, and issue a written decision within two days of the hearing. Next, the inmate has four days to appeal the IGRC decision to the superintendent of the facility, who must respond within ten days and must provide "simple directions" on how to appeal to the next level, the Central Office Review Committee ("CORC"). The inmate's final opportunity for resolution of his grievance is to appeal to the CORC within four working days of the

---

[2] The inmate has fourteen days from the date of the incident complained of to file a complaint, but "mitigating circumstances" may toll the deadline. 7 N.Y.C.R.R. § 701.7(a)(1).

superintendent's decision.  The CORC then has 20 working days to render a decision.  7 N.Y.C.R.R. § 701.7(c)(4).

The Second Circuit directed this Court to determine three issues.  Supra opinion, at 2.  The first two issues implicate both procedure and the substance of his claims, whereas, the third issue is exclusively on the procedural aspect.  Because the procedural requirements must be met before this Court can rule on the merits, the third issue is discussed first.

**A. Whether Plaintiff's failure to exhaust remedies is justified by "special circumstances" in light of Giano, 380 F.3d at 675-76, and Hemphill, 380 F.3d at 689.**

The Supreme Court held that the PLRA requires administrative exhaustion even where the grievance process does not permit money damages and the prisoner seeks only money damages. Booth v. Churner, 532 U.S. 731, 734 (2001).  Noting that Congress replaced the text of the statute in § 1997e(a), the Court held that Congress has mandated exhaustion regardless of the "relief sought and offered" through administrative procedures.  Id. at 741, note 6.  The Court further stated that one must "'exhaust[]' processes, not forms of relief."  Id. at 739.  However, there may be "certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."  Giano, 380 F.3d at 676 (citing Berry, 366 F.3d at 88; Rodriguez Order at 1).  In Giano, the plaintiff's reasonable interpretation of ambiguous DOCS regulations justified his failure to exhaust remedies.  Id.  The Second Circuit held that the plaintiff in Giano reasonably concluded that DOCS regulations did not provide any available administrative remedies. Id.  In Hemphill, the Second Circuit held that the plaintiff's attempt to exhaust available

5

administrative remedies by writing directly to a superintendent comported with DOCS procedural rules (or at least, reflected a reasonable interpretation of those regulations), when the plaintiff received threats and his fear of retaliation justified sending a letter directly to a superintendent instead of filing a level one grievance.  380 F.3d at 690.

In this case, Plaintiff offered two reasons for his failure to file grievances - (1) that no relief was available for his constitutional claims; and (2) that he could not recover any monetary damages. As the Supreme Court held in Booth, the mere fact that he could not recover any monetary damages through the state prison's grievance procedure is not a valid justification for failing to file grievances.  532 U.S. at 734.  The other reason that Plaintiff provided also is without merit.  All of Plaintiff's claims pertain to prison conditions.  The PLRA is unambiguous about the exhaustion requirement that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as available are exhausted."  42 U.S.C. § 1997e(a).

The special circumstances under Giano and Hemphill are distinguishable from this case. Unlike Giano, Plaintiff in this case did not rely on any provisions of DOCS regulations in his decision not to exhaust remedies.  Therefore the special circumstances identified in Giano do not exist in this case.  Hemphill may be more analogous to this case.  Like Hemphill, Plaintiff in this case wrote directly to the Superintendent, skipping the level one grievance procedure.  However, the similarity of this case to Hemphill stops there.  Unlike in Hemphill, here, there is no evidence of reliance on any of the DOCS' regulations.  This Court specifically afforded Plaintiff an opportunity to explain why he skipped level one of the grievance procedures and was apprised of the decisions in Johnson, Giano, and Hemphill.  Notwithstanding this, Plaintiff does not rely on any misinterpretation of DOCS regulations.  Furthermore, Plaintiff was not under threats that might

justify writing a letter directly to a superintendent rather than filing a level one grievance. Id. at 690. Therefore, no special circumstances exist in this case.

### B. Whether Boddie's letters of complaint sufficed to put the defendants on notice and give them an opportunity to address Boddie's complaints internally in light of Johnson, 380 F.3d 691.

In Johnson, the Second Circuit remanded the case to the district court to determine, among other things, whether the plaintiff was justified in raising his complaint against a defendant through a disciplinary appeal, rather than by filing a separate grievance. Id. at 698. The Second Circuit asked whether the plaintiff's submissions in the disciplinary process were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a). Id. at 697. It should be noted that the Second Circuit decisions in Johnson and Giano did not overrule its prior decision in Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004). Rather, the Second Circuit reaffirmed Berry in Giano. 380 F.3d at 676. In Berry, the plaintiff filed telephone and mail complaints directly to the Inspector General and argued that the exhaustion requirement was met. 237 F. Supp. 2d 450 (S.D.N.Y. 2002), *aff'd*, 366 F.3d 85 (2d Cir. 2004). However, the court ruled that the city prisoner's informal complaints to city's inspector general's office did not exhaust his administrative remedies, and, thus, the prisoner was required under the PLRA to adhere to available formal administrative procedures before filing a § 1983 suit against prison officials. Id. at 452 ("'To allow [P]laintiff to bypass those procedures would obviate the purpose for which the procedures were enacted.'")(quoting Grey v. Sparhawk, 2000 WL 815916, at 2 (S.D.N.Y. June 23, 2000)).

In the instant case, Plaintiff did not raise his complaint through a disciplinary appeal as in

7

Johnson.³ Rather, Boddie filed two formal complaints, one against Officer Barber and the other against Officer Bradley. With regard to his complaint against Barber, Boddie did not specify to whom he sent a letter. However, he stated that he did not receive any response from "state officials out of Central Office." Compl. at 4D. With regard to Bradley, Plaintiff wrote a complaint to Deputy Superintendent of Security William J. Connolly and a further letter to Central Office. Plaintiff did not receive any response to his complaint.

As opposed to Johnson, in which the plaintiff pursued his claims through a different venue, here, Plaintiff ignored and skipped the first step of the grievance procedure. Plaintiff should have filed an initial complaint with the IGRC, and, if not satisfied, appealed its decision to the Superintendent, and then finally to the Central Office. 7 N.Y.C.R.R. § 701.7. The question in this case is not, as in Johnson, whether Plaintiff's submissions in the disciplinary process are sufficient to exhaust the remedies under the PLRA in a substantive sense, but rather, whether Plaintiff's failure to follow the established state grievance procedure is justified. In his own accounts, Plaintiff admitted that he sent complaint letters to either the Superintendents or Central Office, thereby skipping the first level of grievance procedure. Memorandum of Law at pp. 36-39. Plaintiff's

---

³ Plaintiff now claims that he appealed the misbehavior reports filed against him and that these appeals should be sufficient to exhaust his claims based on those misbehavior reports. In support of this claim, he provided his letter of Appeal to the Commissioner dated Feb. 18, 1999 along with the subsequent Review of the Superintendent's Hearing by the Director of Special Housing/ Inmate Disciplinary Program. However, this evidence is not related to any of the claims alleged in the instant Complaint. Evidence of exhaustion of remedies in one claim does not prove that the administrative remedies are exhausted in other claims. Further, even if Plaintiff amends his Complaint and includes this new allegation, he still fails the exhaustion requirement because Plaintiff does not allege, and therefore fails to show, that he reasonably believed that the appellate process for disciplinary rulings and inmate grievance process is "one and the same" because of unclear regulations governing grievance procedures. Johnson, 380 F.3d at 696.

failure to follow the grievance procedure and to provide any justification for failing to follow the procedure is distinguished from complaining through the disciplinary appeal in Johnson and Giano. Berry's holding governs the result of the case before the Court today.

### C. Whether Plaintiff's appeals of the misbehavior report filed against him were "enough to 'alert [] the prison to the nature of the wrong for which redress is sought,'"

In Johnson, the Second Circuit directed the district court to determine whether the plaintiff's descriptions of the defendant's misconduct in the disciplinary appeal provided enough information to allow prison officials to take appropriate responsive measures. 380 F.3d at 697. As the words "descriptions" and "enough information" indicate, this inquiry is about the "particular content" of inmate grievances. Id. Also, the Johnson court's quotation of a Seventh Circuit case confirms the fact that this inquiry is about the content of the grievances. Id. ("if prison regulations do not prescribe any particular *content* for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'") (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)) (emphasis added).

The Court does not consider the content of the grievance in this case, because, first, the decision to dismiss the case was not based on the contents of the complaint letters sent by Plaintiff or any appeals he made and, second, the issue Petitioner raised on appeal (that he appealed the misbehavior reports filed against him and that these appeals should be sufficient to exhaust the remedies) is not the same as the claims he alleged in the Complaint. Supra note 3, at 7. Plaintiff skipped the level one grievance procedure without justification. Accordingly, his claim of exhausting administrative remedies through disciplinary appeals is not sufficient to meet the exhaustion requirement. Id. Because Plaintiff's grievance was not properly before the prison

officials from a procedural standpoint, the content of his grievance is irrelevant.

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED** because Plaintiff has failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED.**

Date:January 20,2006

_____
Thomas J. McAvoy
Senior, U.S. District Judge